1
2
3
4

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEVIN JAMES TEEMAN and ANDREA JOY LYONS, Plaintiffs, v. YAKIMA COUNTY, YAKIMA COUNTY SHERIFF'S OFFICE, MIKE RUSSELL, BRIAN WINTER, CHAD MICHAEL, and LEO HULL, [1] Defendants. | NO:  1:15-CV-3139-TOR ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Motion and Memorandum for Summary Judgment (ECF No. 15). This matter was submitted for consideration without oral argument. The Court—having reviewed the briefing, the record, and files therein—is fully informed.

---

[1] The Clerk of Court shall modify the docket to reflect the correct spelling of Brian Winter and Chad Michael.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 1

**BACKGROUND**

This case concerns the temporary seizure of Plaintiffs' children in September 2014 by Deputy Leo Hull, a Defendant here, and a Child Protective Services ("CPS") official, not named in this suit. Plaintiffs, proceeding *pro se*, commenced suit against Yakima County, Yakima County Sheriff's Department, and several of its officers on August 5, 2015. ECF No. 1. This Court construes Plaintiffs' Amended Complaint, the operative pleading, as asserting section 1983 claims under the Search and Seizure Clause of the Fourth Amendment, the Due Process Clause of the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment, as well as several state tort law claims and a Washington Public Records Act claim.[2] ECF No. 2.

---

[2] While the Amended Complaint states that Defendants have wrongfully withheld documents in violation of the Freedom of Information Act, the Act is inapplicable to state or local governments, such as the Yakima County Sheriff's Office. *See* 5 U.S.C. § 551(1) (defining "agency" as "each authority of the Government of the United States); *Butler v. Marshall*, 995 F.2d 230, 230 (9th Cir. 1993) (unpublished). Accordingly, this Court construes this claim under Washington's Public Records Act.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 2

1    In the instant motion, Defendants move for summary judgment on all

2    claims.[3] ECF No. 15. Primarily, Defendants assert they are immune from

3    Plaintiffs' federal and state law claims.

### FACTS

5         The following are the undisputed material facts unless otherwise noted. For

6    purposes of summary judgment, "[i]f a party fails to properly support an assertion

7    of fact or fails to properly address another party's assertion of fact as required by

8    Rule 56(c), the court may . . . consider the fact undisputed." Fed. R. Civ. P.

9    56(e)(2); *see also* L.R. 56.1(d) ("[T]he Court may assume that the facts as claimed

10   by the moving party are admitted to exist without controversy except as and to the

11   extent that such facts are controverted by the record set forth [in the non-moving

12   party's opposing statement of facts]"). Plaintiffs have failed to respond to

13   Defendants' statement of material facts or otherwise present their own statement of

14   disputed facts. However, they have filed a verified Amended Complaint. *See* ECF

15   No. 2.

---

[3] Plaintiff Teeman also alleges that Defendants denied him equal protection of the laws when they targeted him because of his race. ECF No. 2. Defendants do not address this claim in their briefing; thus, this Court will not enter a ruling as to this remaining claim. See Fed. R. Civ. P. 56.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 3

**A. Facts Regarding Child Abuse Investigation & Seizure of Children**

In the early hours of September 11, 2014, CPS received a report from Eric Galden, a registered nurse at Yakima Regional Medical Center, concerning a serious injury to a four-month old child, CT. ECF No. 16 at 5 (CPS Intake Report). As documented in the CPS report, Mr. Galden informed CPS that the injury—"a femur fracture . . . a complete break of the long bone"—is "typically difficult to break" and that he was "very concerned for the welfare of the child." *Id.* Mr. Galden indicated to CPS that he was concerned as to how the child was injured, stating "the story doesn't seem to quite match the injury." *Id.*[4] Plaintiffs note that both the ER doctor, Dr. Shawn Wilson, on duty that morning and an orthopedic surgeon, Dr. Roy Pierson, who examined CT later that day, did not indicate any sign of abuse and released CT back into Plaintiffs' custody. ECF No. 2 at 4; *see* ECF No. 22 at 22 (Dr. Pierson's treatment notes), 43-46 (Dr. Wilson's treatment notes).

---

[4] Whether or not Mr. Galden actually made these statements, they were documented in the CPS report—this Court does not find reason to doubt the authenticity or trustworthiness of this document—which was subsequently provided to the Yakima County Sheriff's Office and undoubtedly impacted its investigation and assistance to CPS. *See* Fed. R. Evid. 801(c)(2).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

CPS referred this case to the Yakima County Sheriff's Office on September 11, 2014. ECF No. 16 ¶ 4 (Russell Declaration). Detective Sergeant Mike Russell, who receives and reviews cases involving allegations of child abuse, received the CPS report regarding CT and assigned the case to Detective Chad Michael to start a criminal investigation. *Id.* ¶¶ 3-11.

A day later, on September 12, 2014, CPS called the Yakima County Sheriff's Office for assistance in possibly removing a child from a home. *See* ECF No. 17 at 6 (Officer Report for Incident). Around 11 a.m., Deputy Leo Hull was dispatched to Plaintiffs' home to assist CPS employee Staci Foster.[5] ECF No. 17 ¶ 4 (Hull Declaration). Foster advised Hull that she received a report from a medical provider that a four-month old, CT, was treated for a fracture to her femur and that Foster "needed to further investigate and possibly remove the children from the residence." *Id.* ¶ 5. In other words, the decision to remove the children was not yet formed before Foster and Hull arrived at Plaintiffs' residence.

When Foster and Hull arrived at the residence, Plaintiff Teeman came from

---

[5] A parallel case is currently proceeding against CPS employee Francesca Guzman. *Teeman v. Guzman*, No. 1:15-cv-3138-TOR (filed Aug. 5, 2015). Staci Foster, although originally a named defendant in this parallel proceeding, has been dismissed for failure to effectuate proper service of process. *Id.* (ECF No. 26 at 2).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 5

the rear of the residence where he was working in his shop.[6] *Id.* ¶ 7. Hull and

Foster followed Teeman to his shop and observed therein CT and a 19-month old,

both of whom had been briefly left unattended while Teeman spoke with the

authorities. *Id.*

Teeman explained that CT was injured around 8:30 a.m. on September 10,

2014, when Teeman picked up her car seat from the front and CT, unbuckled, fell

out and on top of Teeman. *Id.* ¶ 9. CT was taken to the hospital around 11 p.m. the

day she was injured. *Id.* ¶ 11. Foster indicated to Hull that this version of events

was inconsistent with other accounts learned by Foster.[7] *Id.* ¶ 10.

After their conversation with Teeman, Hull and Foster determined that the

children should be placed into the custody of CPS until a professional could

examine CT's injuries and make an assessment. ECF No. 17 ¶ 13. Neither Hull nor

Foster had received a warrant or court order to do so. ECF No. 2 at 2. In the

---

[6] Teeman disputes Hull's estimate as to the distance between the front of the house

and the shop. ECF No. 22 at 9. The exact distance is not a material fact.

[7] Plaintiffs object to this statement as being unsupported by any factual

documentation. ECF No. 22 at 9. However, the relevant purpose of this fact is the

effect Foster's statement had on Hull's decision and action, not whether Foster's

statement was in fact true. *See* Fed. R. Evid. 801(c)(2).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 6

Amended Complaint, Teeman contends that Foster and Hull's decision to remove the kids once they got to the house was motivated by his appearance—his teeth are worn down and missing due to a medical condition—and his Native American race. *Id.* at 5.

Three doctors at Seattle Children's Hospital reviewed x-rays of CT's injury following the seizure of Plaintiffs' children. ECF No. 19 ¶¶ 14, 16 (Michael Declaration). The doctors formed a "likely diagnosis of osteogenesis imperfecta," which is a brittle bone condition. *Id.* ¶ 26.

Detective Michael, who had been assigned to investigate the case, reviewed these medical records from Seattle Children's Hospital, together with the CPS intake form and Deputy Hull's report, *id.* ¶¶ 12, 16, and determined not to pursue the criminal investigation. Detective Michael closed the investigation on September 25, 2014, and categorized the allegation of child abuse as unfounded. *Id.* ¶ 18. No arrests were made in this case, nor was the case referred to the Yakima County Prosecutor's Office. *Id.* ¶ 19.

The children were ultimately released back to Plaintiffs' care on September 29, 2014.

**B. Facts Regarding Teeman's Public Records Requests**

On October 1, 2014, the Yakima County Sheriff's Office received a request for records from Teeman. ECF No. 18 ¶ 4; *see* ECF No. 18 at 5. CarriAnn Ross,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 7

Records Custodian for the Yakima County Sheriff's Office, testified that these records were made available to Teeman on October 1, 2014. ECF No. 18 ¶ 5; *see* ECF No. 22 at 51 (cover letter to response to records request).

On March 25, 2015, the Yakima County Sheriff's Office received another request from Teeman. ECF No. 18 ¶ 6; *see* ECF No. 18 at 7. These records were made available to Teeman for pickup on March 25, 2015. ECF No. 18 ¶ 7.

Although child medical records are not available to members of the general public, Teeman, as father of CT, received copies of CT's medical records. *Id.* ¶ 8.

## DISCUSSION

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and alterations omitted); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party is only entitled to proceed to trial if it presents sufficient, probative evidence supporting the claimed factual dispute, rather than resting on mere allegations). Moreover, "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), and only evidence which would be admissible at trial may be considered, *Orr v. Bank of Am., NT & SA*, 285

F.3d 764, 773 (9th Cir. 2002). *See also Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (internal quotation marks and brackets omitted)).

**A. Section 1983 Claims**

Plaintiffs allege that Defendant Hull violated their constitutional rights by removing their children from their home without a warrant or just cause.[8] ECF No. 2.

A cause of action pursuant to section 1983 may be maintained "against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983). The rights guaranteed by section 1983 are "liberally and beneficently construed." *Dennis v. Higgins*, 498 U.S. 439, 443 (1991) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 684 (1978)).

//

---

[8] Defendant Russell received the CPS referral and assigned it to Defendant Michael to investigate; however, this is separate from Defendant Hull's actions in helping Foster take custody of the children.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 10

### 1. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). In evaluating a state actor's assertion of qualified immunity, a court must determine (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation such that a reasonable person in the defendant's position would have understood that his actions violated that right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. 223. A court may, within its discretion, decide which of the two prongs should be addressed first in light of the particular circumstances of the case. *Pearson*, 555 U.S. at 236. If the answer to either inquiry is "no," then the defendant is entitled to qualified immunity and may not be held personally liable for his or her conduct. *Glenn v. Washington County*, 673 F.3d 864, 870 (9th Cir. 2011).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-*

*Kidd*, 131 S. Ct. 2074, 2085 (2011). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

When resolving either prong of the qualified immunity analysis at the summary judgment stage, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 134 S. Ct. at 1866. "This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (internal quotation marks omitted).

### a.  Constitutional Violation

Parents and children have a well-established constitutional right to live together without governmental interference, which right is protected by both the Due Process Clause of the Fourteenth Amendment and the Search and Seizure Clause of the Fourth Amendment. *Jones v. County of Los Angeles*, 802 F.3d 990, 1000 (9th Cir. 2015). The Fourteenth Amendment protects the right of parents and children to live together without governmental interference by guaranteeing that children and parents will not be separated by the state without due process of law except in an emergency. *Id.* "Under the Fourteenth Amendment right to familial association, an official who removes a child from parental custody without a warrant 'must have reasonable cause to believe that the child is likely to experience

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 12

serious bodily harm in the time that would be required to obtain a warrant.'" *Id.* (quoting *Rogers v. County of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007)). Similarly, the Fourth Amendment protects against unreasonable seizure of a child. *Id.*

"While the constitutional source of the parent's and the child's rights differ, the tests under the Fourteenth Amendment and the Fourth Amendment for when a child may be seized without a warrant are the same." *Id.* "The Constitution requires an official separating a child from its parents to obtain a court order unless the official has reasonable cause to believe the child is in 'imminent danger of serious bodily injury.'" *Id.* (quoting *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000). "Officials violate this right if they remove a child from the home absent 'information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury.'" *Rogers*, 487 F.3d at 1294 (quoting *Mabe v. San Bernardino County*, 237 F.3d 1101, 1107 (9th Cir. 2001)). In other words, "[o]fficials, including social workers, who remove a child from its home without a warrant must have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant." *Id.* (citing *Mabe*, 237 F.3d at 1108). "Serious allegations of abuse that have been investigated and corroborated usually give rise

to a 'reasonable inference of imminent danger sufficient to justify taking children into temporary custody' if they might again be beaten or molested during the time it would take to get a warrant." *Id.* at 1294-95 (quoting *Ram v. Rubin*, 118 F.3d 1306, 1311 (9th Cir. 1997)).

   This Court finds no violation of Plaintiffs' Fourth and Fourteenth Amendment rights when Defendant Hull helped seize Plaintiffs' children because, at the time of the seizure, Defendant Hull possessed sufficient evidence to give rise to a reasonable inference that the children were in imminent danger of serious bodily injury and that temporary removal was justified to avert this risk. Looking at the undisputed facts, a reasonable jury could reach but one conclusion: Defendant Hull had reason to believe that Plaintiffs' children were likely to experience harm in the time that would be required to obtain a warrant. First, Foster informed Hull that, a day previously, medical provider Eric Galden reported that CT had suffered a serious injury, a fracture to her femur. Second, this same provider expressed concern for the welfare of the child and indicated that the explanation of the injury did not match the injury. Third, over twelve hours passed between the time CT was injured and taken to the hospital by her mother. Fourth, Hull and Foster visited Plaintiffs' residence and corroborated that CT had been injured. Finally, upon interviewing Teeman, Hull had reason to believe—based on information provided by Foster—that Teeman's explanation of the injury had been

inconsistent with other accounts. Even if Plaintiffs doubt the veracity of Mr.

Galden's statements to CPS and Foster's allegations of inconsistent stories, they

have not rebutted the effect these statements had on Hull and his decision to help

Foster take custody of the children. And while Foster indicated that she would

continue to investigate the matter after the children were seized, this did not negate

the reasonable cause that existed at the time of the seizure after the report was

received from Mr. Galden, and Hull and Foster corroborated the injury and

interviewed Teeman. *Cf. Jones*, 802 F.3d at 1007 ("[A]n official may not detain a

child merely in the hope that further investigation will turn up facts suggesting that

exigent circumstances exist."). Accordingly, the seizure of Plaintiffs' children did

not violate Plaintiffs' Fourth or Fourteenth Amendment rights as the undisputed

facts clearly demonstrate reasonable cause to believe the children were in

imminent danger of serious bodily injury and that immediate removal was

justified.

### b.  Clearly Established Law

Even assuming the seizure of Plaintiffs' children violated Plaintiffs'

constitutional rights, Defendant Hull is still entitled to qualified immunity.

"A clearly established right is one that is 'sufficiently clear that every

reasonable official would have understood that what he is doing violates that

right.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Reichle v. Howards*, 132 S. Ct. 2088,

2093 (2012)). While a case need not be directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 131 S. Ct. at 2083; *see Mullinex*, 136 S. Ct. at 308 (noting that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."). The inquiry into whether a law is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullinex*, 136 S. Ct. at 308.

Here, when Plaintiffs' children were seized in September 2014, "[t]he law was clearly established . . . that a child could not be removed from the home without prior judicial authorization absent evidence of 'imminent danger of serious bodily injury and [unless] the scope of the intrusion is reasonably necessary to avert that specific injury.'" *Rogers*, 487 F.3d at 1297 (quoting *Mabe*, 237 F.3d at 1106; *Wallis*, 202 F.3d at 1138; *Ram*, 118 F.3d at 1310). This Court finds a reasonable official, in the position of Defendant Hull, would have believed his conduct was lawful under this well-established precedent.

This Court understands Plaintiffs' view of the situation, especially with the benefit of the exonerating medical information that came to light after the seizure. A parent's right to be with his or her children and free from unjustified interference by the state is a well-established right that our Constitution protects. Moreover, an

allegation of child abuse is a serious affront to a parent when that allegation later turns out to be unfounded.

That being said, a reasonable official—presented with the undisputed facts, as detailed above—would have thought that the children faced the possibility of greater and imminent abuse and were acting under their public duty to prevent this harm. Accordingly, this Court, heeding the Supreme Court's admonition that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *al-Kidd*, 131 S. Ct. at 2085, finds Defendant Hull is protected by qualified immunity and summary judgment is appropriate on this claim.

## 2. Supervisory Liability

Plaintiffs also assert that Defendant Sheriff Winter is liable, as a supervisor, for the seizure of Plaintiffs' children. ECF No. 2.

Vicarious liability is inapplicable to a § 1983 claim, thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Specifically, the Ninth Circuit has held that "supervisors can

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 17

be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

Even assuming Defendant Hull violated Plaintiffs' constitutional rights when he seized Plaintiffs' children without a warrant, this Court finds no evidence that Defendant Winter was involved in the events surrounding the seizure of Plaintiffs' children. *See Taylor*, 880 F.2d at 1045. As Defendants correctly note, the Amended Complaint contains no allegations of Winter's personal participation or even awareness of the situation—it merely notes that he is now the elected Sheriff (but at the time was a deputy Sheriff). *See* ECF Nos. 2 at 1; 15 at 12. Accordingly, Plaintiffs' Fourth and Fourteenth Amendment claims, as against Defendant Winter, are dismissed.

### 3. Municipal Liability

Plaintiffs also assert that Yakima County and the Yakima County Sheriff's Office are liable for the seizure of Plaintiffs' children. ECF No. 2.

Local governments are "persons" who may be subject to suits under § 1983. *Monell*, 436 U.S. at 690. However, a municipality may only be held liable for constitutional violations resulting from actions undertaken pursuant to an "official

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 18

municipal policy." *Id*. at 691. As the Supreme Court articulated in *Monell*, the

purpose of the "official municipal policy" requirement is to prevent municipalities

from being held vicariously liable for unconstitutional acts of their employees

under the doctrine of respondeat superior. *Id.*; *see also Gravelet-Blondin v.*

*Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). Thus, the "official municipal policy"

requirement "distinguish[es] acts of the *municipality* from acts of *employees* of the

municipality, and thereby make[s] clear that municipal liability is limited to action

for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*,

475 U.S. 469, 479-80 (1986) (emphasis in original) (footnote omitted); *see*

*Gravelet-Blondin*, 728 F.3d at 1096 ("[A] municipality is subject to suit under

§ 1983 only if it is alleged to have caused a constitutional tort through a police

statement, ordinance, regulation, or decision officially adopted and promulgated by

that body's officers." (internal quotation marks omitted)).

The Ninth Circuit recognizes four categories of "official municipal policy"

sufficient to establish municipal liability under *Monell*: (1) action pursuant to an

express policy or longstanding practice or custom; (2) action by a final

policymaker acting in his or her official policymaking capacity; (3) ratification of

an employee's action by a final policymaker; and (4) failure to adequately train

employees with deliberate indifference to the consequences. *Christie v. Iopa*, 176

F.3d 1231, 1235-40 (9th Cir. 1999). A plaintiff must also establish the requisite

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 19

causal link between this "policy" and the alleged constitutional deprivation. *See Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008). The Supreme Court articulated the causation requirement as follows:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct casual link between the municipal action and the deprivation of federal rights.

*Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Id.* at 405.

Even assuming Defendant Hull violated Plaintiffs' constitutional rights when he seized Plaintiffs' children without a warrant, this Court finds Plaintiffs have failed to present any evidence to establish municipal liability and overcome summary judgment as to their Fourth and Fourteenth Amendment claims against the County and its Sheriff's Office. Dispositive here, Plaintiffs have failed to demonstrate the County was the "moving force" or otherwise provide evidence of a causal link between the County's actions and the deprivation of Plaintiffs' rights. Rather, Plaintiffs' fault the individual actions of Defendant Hull in helping Foster

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 20

1    seize the children. *See Bd. of Cnty. Comm'rs*, 520 U.S. at 406-07 ("That a plaintiff

2    has suffered a deprivation of federal rights at the hands of a municipal employee

3    will not alone permit an inference of municipal culpability and causation; the

4    plaintiff will simply have shown that the *employee* acted culpably."). Accordingly,

5    Plaintiffs' Fourth and Fourteenth Amendment claims, as against Defendants

6    Yakima County and Yakima County Sheriff's Office, are dismissed.

7    **B. Public Records Act**

8    Plaintiffs assert that Defendants—specifically, the Yakima County Sheriff's

9    Office—wrongfully withheld certain unnamed documents regarding its

10   investigation of the child abuse allegations. ECF No. 2 at 3.

11   Under Washington's Public Records Act ("PRA"), a local or state agency

12   has a duty to disclose public records upon request, absent a specific exemption.

13   "Public records shall be available for inspection and copying, and agencies shall,

14   upon request for identifiable public records, make them promptly available to any

15   person." RCW 42.56.080. The PRA is a "strongly worded mandate aimed at giving

16   interested members of the public wide access to public documents to ensure

17   governmental transparency." *Worthington v. Westnet*, 182 Wash.2d 500, 506

18   (2015) (internal quotation marks omitted).

19   This Court finds summary judgment on this claim is warranted. Plaintiffs

20   have failed to rebut the declaration of CarriAnn Ross, the Records Custodian of the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 21

Yakima County Sheriff's Office, who testified that the requested records were immediately made available to Teeman when requested on October 1, 2014, and March 25, 2015. *See* ECF No. 18. In fact, Plaintiffs even present the cover letter to one request response, dated October 1, 2014; however, it is unclear if the documents following the cover letter are the responsive records. *See* ECF No. 22 at 51. Importantly, neither Plaintiffs' Amended Complaint nor their summary judgment briefing addresses which documents have been wrongfully withheld. Accordingly, Defendants are entitled to summary judgment on this claim.

### C. State Law Immunity

Finally, Plaintiffs assert several state tort law claims against Defendants, including malicious prosecution, defamation, and infliction of emotional distress. ECF No. 2.

A brief look at the statutory authority permitting law enforcement to investigate child abuse claims and cause a child to be taken into custody is helpful here. Under Washington law, an officer may, under appropriate circumstances, help take custody of a child without a court order. Pursuant to RCW 26.44.050, "[a] law enforcement officer may take, or cause to be taken, a child into custody without a court order if there is probable cause to believe that the child is abused or neglected and that the child would be injured or could not be taken into custody if it were necessary to first obtain a court order pursuant to RCW 13.34.050." When a

law enforcement agency receives a report of an incident of alleged abuse or neglect involving injury or death to a child by non-accidental means, the agency is required to report the incident to the county prosecutor or city attorney for appropriate action whenever the agency's investigation reveals that a crime may have been committed. RCW 26.44.030.

Because protection of the child's interest is paramount, Washington law limits the liability of officers to the affected parent or guardian:

> Consistent with the paramount concern . . . to protect the child's interests of basic nurture, physical and mental health, and safety, and the requirement that the child's health and safety interests prevail over conflicting legal interests of a parent, custodian, or guardian, the liability of governmental entities, and their officers, agents, employees, and volunteers, to parents, custodians, or guardians accused of abuse or neglect is limited as provided in RCW 4.24.595.

RCW 26.44.280. In turn, RCW 4.24.595, provides that an officer is generally immune from suit for his or her acts or omissions when taking a possible child abuse victim into custody, unless his or her acts or omissions constitute gross negligence:

> Governmental entities, and their officers, agents, employees, and volunteers, are not liable in tort for any of their acts or omissions in emergent placement investigations of child abuse or neglect under chapter 26.44 RCW including, but not limited to, any determination to leave a child with a parent, custodian, or guardian, or to return a child to a parent, custodian, or guardian, unless the act or omission constitutes gross negligence. Emergent placement investigations are those conducted prior to a shelter care hearing under RCW 13.34.065.

RCW 4.24.595(1).

Here, not only were Defendants authorized to investigate the report of child abuse and assist CPS in taking the children into protective custody, they are immunized from suit from Plaintiffs' state tort law claims because Plaintiffs have failed to demonstrate gross negligence. Regarding the criminal investigation, Defendant Michael, after reviewing Hull's police report, the CPS intake report, and CT's medical records, closed the criminal investigation and categorized the child abuse allegation as unfounded. No arrests were made prior to this time nor was the case referred to the prosecutor's office. Regarding the temporary seizure of the children, Defendant Hull had probable cause, as detailed above, to believe that the children were at risk of imminent and serious harm at the time he helped Foster take custody of the children; subsequent information that dispelled allegations of abuse is irrelevant to the inquiry of whether there was probable cause at the time of seizure. Accordingly, Defendants are immune from Plaintiffs' state law tort claims pursuant to RCW 4.24.595 and summary judgment on these claims is warranted.

**ACCORDINGLY, IT IS ORDERED:**

1. The Clerk of Court shall modify the docket to reflect the correct spelling of Brian Winter and Chad Michael.

2. Defendants' Motion and Memorandum for Summary Judgment (ECF No. 15) is **GRANTED in part** and **DENIED in part**. Plaintiffs' section 1983

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 24

familial interference and unlawful seizure claims, as well as all of
Plaintiffs' state law claims, are **DISMISSED**. Plaintiffs' section 1983
equal protection (discrimination) claim, which Defendants failed to
address in their motion for summary judgment, is the sole claim
remaining that this Court discerns from the Amended Complaint.

3. Because the Preliminary Scheduling Order (ECF No. 13) contemplated
one round of motion practice and the parties have not addressed the equal
protection (discrimination) claim, the Court hereby orders additional
briefing: **No later than May 9, 2016**, Defendants shall file any
supplemental Motion for Summary Judgment addressing the remaining
claim. Plaintiffs shall respond and Defendants may reply according to
the time periods allowed by the Local Rules.

The District Court Executive is directed to enter this Order and provide
copies to the parties.

DATED April 18, 2016.



THOMAS O. RICE
Chief United States District Judge