UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEVIN JAMES TEEMAN and ANDREA JOY LYONS,<br><br>  Plaintiffs,<br><br>  v.<br><br>YAKIMA COUNTY, YAKIMA COUNTY SHERIFF'S OFFICE, MIKE RUSSELL, BRIAN WINTER, CHAD MICHAEL, and LEO HULL,<br><br>  Defendants. | NO: 1:15-CV-3139-TOR<br><br>ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Second Motion and Memorandum for Summary Judgment (ECF No. 25). This matter was submitted for consideration without oral argument. The Court—having reviewed the briefing, the record, and files therein—is fully informed.

//

//

ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT ~ 1

## BACKGROUND

This case concerns the temporary seizure of Plaintiffs' children in September 2014 by Deputy Leo Hull, a Defendant here, and a Child Protective Services ("CPS") official, not named in this suit. Plaintiffs, proceeding *pro se*, commenced suit against Yakima County, Yakima County Sheriff's Department, and several of its officers on August 5, 2015. ECF No. 1. This Court previously construed Plaintiffs' Amended Complaint, the operative pleading, as asserting section 1983 claims under the Search and Seizure Clause of the Fourth Amendment, the Due Process Clause of the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment, as well as asserting several claims under state tort law and the Washington Public Records Act. ECF No. 24.

On April 18, 2016, this Court dismissed Plaintiffs' search and seizure, due process, and state law claims. *Id.* Accordingly, the only claim remaining is Plaintiffs' equal protection claim, which Defendants previously failed to address in their first motion for summary judgment.

In the instant motion, Defendants move for summary judgment on Plaintiffs' remaining claim. ECF No. 25. Specifically, Defendants assert that Plaintiffs cannot state a prima facie case of racial discrimination. Plaintiffs have not filed anything in response to Defendants' motion.

//

**FACTS**

The following are the undisputed material facts unless otherwise noted. For purposes of summary judgment, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2); *see also* L.R. 56.1(d) ("[T]he Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by the record set forth [in the non-moving party's opposing statement of facts]"). Plaintiffs have failed to respond to Defendants' statement of material facts or otherwise present their own statement of disputed facts. However, they have filed a verified Amended Complaint, *see* ECF No. 2, which the Court has considered.

In the early hours of September 11, 2014, CPS received a report from Eric Galden, a registered nurse at Yakima Regional Medical Center, concerning a serious injury to a four-month old child, CT.[1] ECF No. 26 ¶ 15; *see* ECF No. 27 at 6-9 (CPS Intake Report). As documented in the CPS report, Mr. Galden informed CPS that the injury—"a femur fracture . . . a complete break of the long bone"—is

---

[1] While the Intake Report lists Mr. Teeman's race and ethnicity as white/Caucasian, ECF No. 27 at 8, he identifies as Native American, ECF No. 2.

ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT ~ 3

"typically difficult to break" and that he was "very concerned for the welfare of the child." ECF No. 26 ¶ 18; *see* ECF No. 27 at 6.  Mr. Galden indicated to CPS that he was concerned as to how the child was injured, stating "the story doesn't seem to quite match the injury." ECF No. 26 ¶ 15; *see* ECF No. 27 at 6. Plaintiffs note that both the Emergency Room doctor, Dr. Shawn Wilson, on duty that morning and an orthopedic surgeon, Dr. Roy Pierson, who examined CT later that day, did not indicate any sign of abuse and released CT back into Plaintiffs' custody. ECF No. 2 at 4.

CPS referred this case to the Yakima County Sheriff's Office on September 11, 2014. ECF No. 26 ¶ 15. Detective Sergeant Mike Russell, who receives and reviews cases involving allegations of child abuse, received the CPS report regarding CT and assigned the case to Detective Chad Michael to start a criminal investigation. *Id.* ¶¶ 16, 22.

A day later, on September 12, 2014, CPS called the Yakima County Sheriff's Office for assistance in possibly removing a child or children from a home. *Id.* ¶ 1. Deputy Leo Hull was dispatched to Plaintiffs' home to assist CPS

employee Staci Foster.[2] *Id.* Foster advised Hull that she received a report from a medical provider that a four-month old, CT, was treated for a fracture to her femur and that Foster "needed to further investigate and possibly remove the children from the residence." *Id.* ¶ 2.

When Foster and Hull arrived at the residence, Plaintiff Teeman came from the rear of the residence where he was working in his shop. *Id.* ¶ 4. Hull and Foster followed Teeman to his shop and observed therein CT and a 19-month old, who had both briefly been left unattended while Teeman spoke with the authorities. *Id.* ¶¶ 5, 6.

Teeman explained that CT was injured around 8:30 a.m. on September 10, 2014, when Teeman picked up her car seat from the front and CT, unbuckled, fell out and on top of Teeman. *Id.* ¶ 8. CT was taken to the hospital around 11 p.m. the day she was injured. *Id.* ¶ 10. Foster indicated to Hull that this version of events was inconsistent with other accounts learned by Foster. *Id.* ¶ 9.

After their conversation with Teeman, Hull and Foster determined that the children should be placed into the custody of CPS until a professional could

---

[2] A parallel case is currently proceeding against CPS employee Staci Foster. *Teeman v. Wash. Dep't of Soc. & Health Servs.*, No. 1:16-cv-3040-TOR (filed Mar. 23, 2016).

ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT ~ 5

1  examine CT's injuries and make an assessment. *Id.* ¶ 12. Neither Hull nor Foster
2  had received a warrant or court order to do so. ECF No. 2 at 2. Plaintiffs contends
3  that Foster and Hull's decision to remove the kids once they got to the house was
4  motivated by Teeman's physical appearance—his teeth are worn down and
5  missing due to a bone disease called osteogeneis imperfecta, and he is Native
6  American. *Id.* at 5.

7  Three doctors at Seattle Children's Hospital reviewed x-rays of CT's injury
8  following the seizure of Plaintiffs' children. ECF No. 26 ¶¶ 27-29. The doctors
9  formed a "likely diagnosis of osteogenesis imperfecta," the same condition from
10 which Teeman suffers. *Id.* ¶ 28.

11 Detective Michael, who had been assigned to investigate the case, reviewed
12 these medical records from Seattle Children's Hospital, together with the CPS
13 intake form and Deputy Hull's report, *Id.* ¶¶ 23, 27, and determined not to pursue
14 the criminal investigation, *Id.* ¶ 30. Detective Michael closed the investigation on
15 September 25, 2014, and categorized the allegation of child abuse as unfounded.
16 *Id.* No arrests were made in this case, nor was the case referred to the Yakima
17 County Prosecutor's Office. *Id.* ¶ 32.

18 //
19 //
20 //

ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY
JUDGMENT ~ 6

# DISCUSSION

## A. Standard of Review

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and alterations omitted); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party

is only entitled to proceed to trial if it presents sufficient, probative evidence supporting the claimed factual dispute, rather than resting on mere allegations). Moreover, "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), and only evidence which would be admissible at trial may be considered, *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). *See Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (internal quotation marks and brackets omitted)).

**A. Section 1983**

This Court construes Plaintiffs' Amended Complaint as seeking to hold Defendants liable under section 1983 for targeting Plaintiffs because of Plaintiff Teeman's race and physical disability. ECF No. 2.

To establish a section 1983 claim, a claimant must prove "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which the plaintiff complains.'" *Id.* at 633 (brackets omitted) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) with emphasis added).

Defendants do not appear to dispute that they were acting under color of state law. The Court, therefore, turns its attention to whether Defendants committed an act or participated in an act that deprived Plaintiffs of some federal right, privilege, or immunity.

### 1. Equal Protection Clause

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (internal quotation marks omitted). To state a section 1983 claim for violation of

equal protection, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Id.* To avoid summary judgment on a claim of racial discrimination, the plaintiff must "produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that [the challenged action] was racially motivated." *Jones v. Williams*, 791 F.3d 1023, 1037 (9th Cir. 2015) (quoting *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948-49 (9th Cir. 2003)); *see also Manning v. Basey*, 541 F.App'x 742, 744 (9th Cir. 2013) (noting that a selective enforcement claim requires proof of discriminatory motive and disparate impact (citing *Am.-Arab Anti-Discrimination Comm.. v. Reno*, 70 F.3d 1045, 1062-63 (9th Cir. 1995)).

This Court finds no reasonable jury could find for Plaintiffs on their equal protection claim. In short, Plaintiffs have not come forward with any evidence that, when viewed in the light most favorable to them, demonstrates that Defendants acted with discriminatory intent: they have simply chosen to rest on the allegations within the Amended Complaint. Besides the assertion that Plaintiff Teeman is Native American and suffers from a disability, Plaintiffs have presented no evidence showing that Defendants' actions were motivated by Teeman's membership in a protected class. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) ("Mere indifference to the effects of a decision on a

particular class does not give rise to an equal protection claim, and conclusory statements of bias do not carry the nonmoving party's burden in opposition to a motion for summary judgment." (internal citation omitted)). Plaintiffs' conclusory allegations within their Amended Complaint that Defendants acted with "racial intentions" or targeted Plaintiffs because of Teeman's race and disability are insufficient to create a factual issue for purposes of surviving summary judgment. *Nelson*, 83 F.3d at 1081-82 ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

To the extent this claim is asserted against Defendant Hull, the undisputed facts show that he and Foster removed Plaintiffs' children from the home because they had reason to believe the children were in imminent danger of serious bodily injury. First, Foster informed Hull that, a day previously, medical provider Eric Galden reported that CT had suffered a serious injury, a fracture to her femur. Second, this same provider expressed concern for the welfare of the child and indicated that the explanation of the injury did not match the injury. Third, over twelve hours passed between the time CT was injured and taken to the hospital by her mother. Fourth, Hull and Foster visited Plaintiffs' residence and corroborated that CT had been injured. Finally, upon interviewing Teeman, Hull had reason to believe—based on information provided by Foster—that Teeman's explanation of the injury had been inconsistent with other accounts.

ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT ~ 11

To the extent this claim is asserted against Defendants Michael and Russell, the undisputed facts show that Defendants opened the investigation into allegations of child abuse against CT based on a referral from CPS and closed the investigation once the Seattle Children's Hospital doctors determined CT's injuries were due to a bone condition. No arrests were made, and the case was not referred to the Yakima County Prosecutor's Office. This Court also notes that Defendants Michael and Russell never met Plaintiff Teeman. ECF No. 26 ¶¶ 21, 31. At most, they would have seen that both Teeman and Lyons' race and ethnicity were white/Caucasian, as listed on the CPS intake form. *See* ECF No. 27 at 7-8. This evidence does not support an inference that Defendants targeted Plaintiffs because Teeman is Native American and suffers from a disability.

Accordingly, because no reasonable jury could find for Plaintiffs, Defendants are entitled to summary judgment on this sole remaining claim.[3]

//

//

---

[3] A municipality cannot be liable where there has been no constitutional injury in the first instance. *Yousefian v. City of Glendale*, 779 F.3d 1010, 1016 (9th Cir. 2015). Accordingly, the municipal entities are similarly entitled to summary judgment.

ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT ~ 12

**ACCORDINGLY, IT IS ORDERED:**

1. Defendants' Second Motion and Memorandum for Summary Judgment (ECF No. 25) is **GRANTED**.

2. The District Court Executive is directed to enter this Order, enter **JUDGMENT** for Defendants, provide copies to the parties, and **CLOSE** the file.

DATED July 20, 2016.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT ~ 13